# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| NORTH VENTURE PARTNERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>VOCUS, INC.,<br><br>Defendant. | Case No. C 14-00337-RS<br><br>**AGREED UPON STATEMENT OF FACTS FOR APPOINTED SPECIAL MASTER** |

Pursuant to the Stipulation and Order to Appoint Special Master (Dkt. 58), Plaintiff North Venture Partners, LLC ("NVP") and Defendant Vocus, Inc. ("Vocus") hereby stipulate and agree to the following statement of facts:

## THE APA AND THE EARN OUT PROVISION

1. NVP was owned and operated by two individuals, Alex Bernstein and David Brody.

2. On February 24, 2011, Vocus and NVP entered into an Asset Purchase Agreement ("APA")[1] to purchase certain assets of NVP, a company that operated a social media software and services business and had a dedicated division operating under the name "North Social." That division provided an online platform that enabled subscribers to purchase and install a suite of Facebook Fan Page applications and certain services in connection with such applications (the "Business," which is a defined term in the APA).

3. The APA provided that Vocus would purchase the assets of the Business for $7,000,000 and NVP could receive additional earn-out payments (the "Earn Out" or the "Earn Out Provision"), if certain metrics were met between February 24, 2011 and February 28, 2013 (the "Earn Out Period"). As part of the acquisition, the assets of NVP were transferred to Vocus Social Media, LLC ("VSM"), an entity established to operate the Business.

4. As set forth in the APA, if (i) certain EBITDA margin requirements were met[2] and (ii) if NVP achieved certain monthly run rate milestones (as defined in the APA) then NVP was to receive payments, as follows:

| Monthly Run Rate Milestone | Additional Earn Out Amount |
| --- | --- |
| First Tier Criteria: $250,000 | An additional $3,000,000 (Total: $10M) |
| Second Tier Criteria: $500,000 | an additional |

---

[1] To the extent there is any inconsistency or ambiguity between this document and the terms of the APA, the APA controls. Nothing in this document is intended to modify, amend, clarify or impact in any way the terms of the APA.

[2] The discussion of the EBITDA margin requirement is for background purposes, as the Special Master is not being asked to decide whether the margin requirement was met.

1

|   |   |   |
|---|---|---|
|   |   | $4,000,000 (Total: $14M) |
|   | Third Tier Criteria: $750,000 | an additional $5,000,000 (Total: $19M) |
|   | Fourth Tier Criteria: $1,000,000 | an additional $6,000,000 (Total: $25M) |

(APA, 1.08).

Thus, to earn the maximum $18 million Earn Out—i.e., the Fourth Tier Earn-Out Amount—the Monthly Run Rate[3] for any month during the Earn Out Period had to equal or exceed $1 million with certain exceptions as defined in the definition of "Revenue" in the APA.[4]

## THE BASIC DISPUTE

5. The overarching issue in dispute, is whether NVP met the Fourth Tier Criteria milestone in February 2013, or whether a larger pro-rated portion of the Earn Out than was paid should have been paid. As set forth in the Order appointing the Special Master (dkt. 58), to the extent possible, computations should separately set forth: (i) revenue on North Social sales of North Social products; (ii) revenue on North Social sales of North Social services; (iii) revenue on Vocus sales of North Social products as standalone products; (iv) revenue on Vocus sales of North Social products as part of another product or suite of products; and (v) revenue on Vocus sales of North Social services.

6. NVP contends that Vocus's Earn Out calculations do not accurately state the revenue. Vocus disputes this contention, and avers that revenues were properly calculated in accordance with GAAP.

## THE DISPUTED IMPACT OF THE PRICE CHANGES

7. At the core of the parties' dispute is the effect of certain price increases that were instituted by VSM. NVP contends that these price increases should be applied not only to its own (VSM) sales

---

[3] For purposes of the Earn Out, "Monthly Run Rate" and "Revenue" were defined in Tab A to the APA
[4] NVP was entitled to a pro-rata Earn Out payment based on its performance in the final month of the Earn Out Period if the milestones had not been achieved prior to the final month of the Earn Out Period. For its part, Vocus acknowledges that a portion of the "Third Milestone" was achieved in the final month of the Earn Out Period, and it paid NVP $4,558,527. However, as set forth herein, NVP contends that all 4 milestones were achieved in full.

of the North Social software, but also, for purposes of calculating Earn Out revenue, to Vocus's sales of the North Social software (both standalone and as part of VMS).

8. Vocus disputes that the North Social price increases had any impact on calculation of revenues generated by Vocus's sales of the North Social product.

9. The Special Master is not being asked to decide this dispute, but is being asked to compute the impact the price changes may have on the Earn Out computation.

## ACCOUNTING ISSUES TO BE DECIDED BY THE SPECIAL MASTER

10. NVP also claims that there are other inaccuracies in Vocus's Earn-Out computation. Vocus denies these allegations and its expert will respond to these allegations in the context of this proceeding.

11. The Special Master is being asked to decide these accounting issues.

DATED: September 11, 2015

GREENBERG TRAURIG, LLP

By: /s/ _____
Robert J. Herrington

Attorneys for Defendant
VOCUS, INC.

DATED: September 11, 2015

JRA LAW PARTNERS, LLP

By: /s/ _____
Rod Divelbiss

Attorneys for Plaintiff
NORTH VENTURE PARTNERS, LLC.