UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH VENTURE PARTNERS, LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>VOCUS, INC.,<br><br>    Defendant. | Case No. 14-cv-00337-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIMS** |

## I.   INTRODUCTION

Since January 2014, Plaintiff North Venture Partners, LLC ("NVP") and Defendant Vocus, Inc., have been litigating claims for breach of contract, declaratory relief, and accounting. At the heart of the claim for breach of contract is the question of whether Vocus paid NVP the proper amount for NVP's performance during the twenty-four month period after the purchase date ("the Earn-Out Period"). These claims required complicated computations, and so the parties agreed with the court's permission to appoint a special master pursuant to Federal Rule of Civil Procedure 53 to ascertain the revenue NVP generated during the relevant time period. According to Vocus, in the course of preparing the case for submission to the Special Master, Vocus's expert discovered that NVP had been overpaid for its work under the terms of the agreement. Vocus now seeks leave to add counterclaims for unjust enrichment and money had and received. Pursuant to Local Rule 7-1(b), this matter is suitable for disposition without oral argument.

Essentially, NVP and Vocus contest whether Vocus properly paid NVP under the terms of

the contract. NVP insists that Vocus underpaid them, whereas Vocus now contends that NVP was overpaid. Resolution of both claims requires determining how much Vocus should have paid NVP based on NVP's performance under the terms of the contract. Two judicial proceedings to resolve that question is inefficient and unnecessary. Because NVP has not demonstrated that adding the proposed counterclaims will be unduly prejudicial, or that Vocus unduly delayed filing them, or that the counterclaims are futile, Vocus's motion for leave to add a counterclaim is granted.

## II. FACTS AND PROCEDURAL HISTORY

In February 2011, NVP and Vocus signed an Asset Purchase Agreement, which allowed Vocus to acquire NVP's software "North Social." In addition to paying the purchase price for North Social, Vocus agreed to pay additional earn-out payments if North Social (1) achieved certain revenue milestones during the 24-month period after closing (the "Earn-Out Period"); and (2) maintained cumulative earnings before interest, taxes, depreciation, and amortization margin ("EBITDA margin") greater than or equal to 15%. The total possible value of these earn-out payments was $18,000,000.

At the conclusion of the Earn-Out Period, Vocus believed that North Social had met the criteria for payment under the first and second tiers and a portion of the third tier. Vocus therefore paid NVP $3,000,000 for the first tier; $4,000,000 for the second tier; and $4,558,527, a pro rata share of $5,000,000, for the third tier. According to Vocus, at the time of these payments, it believed that NVP had satisfied the requirement to maintain a 15% EBITDA margin. NVP avers that Vocus paid less than they had bargained for and thus owes NVP $6,441,473. The dispute between Vocus and NVP is about the proper amount due.

NVP filed its claims for relief in January 2014, and trial was set for May 11, 2015. Since this lawsuit commenced, however, the parties litigated two motions to dismiss claims. In August 2014, Vocus filed its Second Amended Complaint ("SAC"), which Vocus answered, thereby ending the pleading stage of this litigation. Soon thereafter, the parties agreed to extend the fact and expert discovery deadline to March 20, 2015. In February 2015, the court rescheduled the

trial date to May 18, 2015.  Subsequently, the parties stipulated and agreed to appoint a Special Master pursuant to Federal Rule of Civil Procedure 53 to assist in finding the facts related to the accounting procedures relevant to resolving the parties' dispute.  On May 11, 2015, this court ordered appointment of a Special Master, who was empowered to hold conferences and direct discovery, and vacated the existing trial date.  The parties encountered some difficulty selecting a Special Master, and they stipulated to extend that deadline to July 1, 2015.  Eventually, the parties agreed that Basil Imburgia was a suitable Special Master, and Mr. Imburgia was duly appointed on July 7, 2015.

Since the Special Master was appointed, the parties have been exchanging discovery and meeting with experts.  During the course of exchanging discovery and taking depositions, Vocus claims to have discovered that NVP had been overpaid under the terms of the contract because NVP had not complied fully with the EBITDA margin requirement throughout the Earn-Out Period.  Based on that finding, Vocus now contends that NVP was entitled to receive $3,800,000, rather than the $11,558,527 paid.  On September 29, 2015, Vocus filed this motion for leave to add counterclaims to recover the difference between the amount paid and the amount NVP was entitled to receive.

Since Vocus filed its motion, the parties have jointly requested a case management conference.  They believe that the Special Master will finalize his review of the materials and render a decision by January 11, 2016.  Currently, there is no trial date scheduled.

### III. LEGAL STANDARD

"The standard for a motion for leave to file a counterclaim is the same as those governing a motion for leave to amend a pleading under Rule 15(a)." *A & M Petroleum, Inc. v. Markel Ins. Co.*, No. 13CV2903-GPC DHB, 2015 WL 3466014, at *1 (S.D. Cal. June 1, 2015).  When a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Denial of a motion for leave to amend a pleading is proper only when "there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, or futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (internal quotation marks and alterations omitted). "[P]rejudice to the opposing party carries the greatest weight," *id.* (internal quotation marks omitted), and is the "touchstone of the inquiry under [R]ule 15(a)," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (internal quotation marks omitted). A proposed counterclaim is futile if the facts as pleaded in the complaint fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), *rev'd on other grounds on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012).[1]

## IV. DISCUSSION

### A. Prejudice

NVP contends that it will suffer great prejudice if Vocus is permitted to add counterclaims because (1) the discovery deadline was originally scheduled to end months ago; (2) the additional counterclaim will require substantial new discovery; and (3) the additional counterclaim will change the nature of the case. Each of these concerns, either alone or together, fall short of undue prejudice.

Although the original pretrial schedule contemplated that discovery and trial should have ended months ago, the trial date was vacated when the Special Master was appointed. The referral to the Special Master reopened discovery, and the parties' papers provide ample evidence to conclude that discovery in these matters is ongoing. AS no trial date is presently set, no trial delay will flow from the inclusion of the counterclaims.

NVP further claims that the additional counterclaims will necessitate substantial additional discovery and the redeposing of Vocus employees about how they calculated the EBITDA margin.

---

[1] NVP argues that Federal Rule of Civil Procedure 16(b)—not Rule 15(a)—governs Vocus's motion. Rule 16(b)(4) requires that a party seeking to amend an existing scheduling order demonstrate good cause for the amendment. No scheduling order is currently in effect, however, and therefore Vocus is not, in fact, requesting an amendment to the scheduling order. Thus, Rule 15(a) controls.

Although NVP lists numerous questions it may need to ask witnesses, it has not demonstrated that the potential need for future discovery is unduly prejudicial.  First, the need for additional discovery alone is not a sufficient ground to deny a motion for leave to file a counterclaim—particularly when the proposed counterclaim involves the same underlying facts.  *See Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS DTBX, 2013 WL 140214, at *4 (C.D. Cal. Jan. 7, 2013).

Second, the need for additional discovery may be more limited than NVP insists.  NVP's claims for relief rest on a finding that it complied with the EBITDA margin requirement.  *See* SAC ¶¶ 6, 13.  Accordingly, NVP has already used depositions and discovery to establish that fact and numerous Vocus employees and former employees agreed that NVP met the EBITDA margin requirement.  However, Vocus's new theory is that its employees concluded that NVP had met the EBITDA-margin requirement, but they were wrong to do so.  Vocus apparently intends to use its expert witnesses to bolster this theory, and thus there appears to be little need to revisit those employees' testimony, or, if so, on a very limited basis.  Indeed, if the additional counterclaims necessitate further discovery, NVP can request additional depositions and discovery at that time, and the parties can address their objections through motion practice.  "Moreover, even if any additional discovery costs could have been avoided, the prejudice caused by these costs would be outweighed by Rule 15's liberal policy favoring amendments to pleading."  *Carrillo*, 2013 WL 140214, at *4 n.3.

Finally, NVP has not shown that the proposed counterclaims would fundamentally alter the nature of the litigation.  At its core, this case is about whether Vocus properly paid NVP according to the terms of the contract.  Whether Vocus underpaid or overpaid, the key question remains the same:  the meaning of the agreement.

**B.  Undue Delay**

NVP also argues that Vocus should not be permitted to file counterclaims because it unduly delayed filing the motion for leave to amend.  "Undue delay by itself, however, is insufficient to justify denying a motion to amend."  *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.

1999). NVP complains that Vocus filed its motion for leave to add counterclaims three months after indicating that it intended to challenge NVP's compliance with the EBITDA margin requirement in a July phone conference. NVP insists that this three-month delay was too long. In addition, NVP notes that Vocus has had access to the data for years, and therefore should have discovered the overpayment sooner.

"The mere fact that an amendment is offered late in the case . . . is not enough to bar it." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir.1981) (internal quotation marks omitted). "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Id.* (internal quotation marks omitted). NVP has not demonstrated prejudice or bad faith. Instead, NVP insists that Vocus has changed its interpretation of the agreement since the beginning of the litigation. That may be the case, but changing legal theories is not tantamount to bad faith.

Finally, NVP insists that it would not have agreed to have a Special Master decide the accounting issues had it known that Vocus would contest NVP's compliance with the margin requirement. The record, however, is devoid of any indications that Vocus sought a referral to a Special Master in order to prolong the litigation or use those proceedings to add counterclaims. Extending the discovery period carries risks and rewards. When NVP agreed to extend discovery it risked that Vocus would uncover evidence to use against NVP. NVP may now regret making that choice, but that is not enough to find that Vocus acted in bad faith.

**C. Futility**

NVP's final argument is that Vocus's proposed counterclaims are futile because Vocus's interpretation of the EBITDA margin requirement is not plausible. In addition, NVP contends that the parties' communications throughout this litigation would result in "an unassailable estoppel defense" to the proposed counterclaims. Nothing in the four corners of Vocus's proposed counterclaim suggests that its interpretation of the contract is implausible or that its claims are estopped. NVP can make those arguments in substantive motions, but they are not enough to

show that Vocus's counterclaims lack merit on their face.[2]

## V.    CONCLUSION

NVP has not shown that granting Vocus's motion for leave to add counterclaims will cause prejudice, that Vocus unduly delayed filing the counterclaims, or that the proposed counterclaims are futile.  Thus, Vocus's motion for leave to add counterclaims is granted.

**IT IS SO ORDERED**.

Dated:  November 16, 2015

_____
RICHARD SEEBORG
United States District Judge

---

[2] NVP threatens to file a motion for leave to amend the SAC if Vocus's motion is granted.  That NVP might file additional claims does not impact consideration of this motion to amend.  If NVP can, in good faith, file a motion to amend the SAC, it may do so, and the court will address the merits of the motion at that time.