ROD DIVELBISS (SBN: 102345)
JRA LAW PARTNERS, LLP
450 Pacific Avenue, Suite 200
San Francisco, CA 94133
Telephone: (415) 788-4646
Facsimile: (415) 788-6929

Attorneys for Plaintiff and Counter-Defendant
NORTH VENTURE PARTNERS, LLP

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH VENTURE PARTNERS, LLC, a California limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VOCUS, INC.,<br><br>　　　　Defendants | CASE NO. 3:14-CV-00337-RS<br><br>**PLAINTIFF AND COUNTER-DEFENDANT NORTH VENTURE PARTNERS, LLC'S MOTION IN LIMINE NO. 2 TO EXCLUDE MATTHEW BIALECKI'S LEGAL INTERPRETATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Dept:　　　　　　　Courtroom 3, 17th Fl.<br>Judge:　　　　　　Hon. Richard Seeborg<br>Trial:　　　　　　　July 25, 2016<br>Pretrial Conference:　July 15, 2016 |
| VOCUS, INC.,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>NORTH VENTURE PARTNERS, LLC, a California limited liability company, and DOES 1 through 50, inclusive<br><br>　　　　Counter-Defendants. | |

## I. INTRODUCTION

Plaintiff and Counter-Defendant ("Plaintiff" or "NVP") respectfully submits this motion *in limine* to exclude Matthew Bialecki's legal interpretations including his interpretations of the terms of the APA. This Motion is supported by the following points and authorities, all pleadings, records, and files in this action, and on such oral and documentary evidence as may be presented at the hearing of this motion.

That evidence is of no probative value and would only be presented for an improper purpose. Accordingly, any such evidence should be excluded.

## II. RELEVANT FACTUAL BACKGROUND

The primary, if not sole, issue underlying the Counterclaim is to determine the intent of the parties when they entered into the APA with respect to the methodology concerning how to calculate the EBITDA Margin Requirement. Vocus has been intentionally vague concerning that issue throughout the process aside from its former CFO Stephen Vintz testifying that Vocus' intent was *not* to include any two percent revenue limitation in the EBITDA Margin Requirement.

Review of the Counterclaim reveals that Vocus never actually alleges that its intent was that cumulative earning should be reduced by the 2% revenue limitation associated with the calculation of the Monthly Run Rate. Instead, Vocus alleges that "Vocus' expert determined that North Social had failed to comply with the EBITDA Margin Requirement" and therefore Vocus had been "mistaken" about its earlier determination that the EBITDA Margin Requirement had been met. Counterclaim, ¶ 11. Continuing, Vocus points to Mr. Bialecki's expert report as to the specific circumstances of the purported "mistake." *Ibid.* Finally, in the Counterclaim, Vocus alleges that "[b]ased on the EBITDA Margin Requirements supplied by its expert, Vocus now alleges that North Venture Partners was only entitled to Earn-Out payments totaling approximately $3,800,000. Counterclaim, ¶ 12.

Discovery confirmed that it was Mr. Bialecki who came up with the "new" method to calculate the EBITDA Margin Requirement, not the individuals who negotiated and signed the APA. It was, in his own words, Mr. Bialecki's "reading" of the terms of the agreement that

prompted the Counterclaim. Divelbiss Declaration ¶ 2. In fact, in his report, Mr. Bialecki repeatedly interprets the language of the APA:

"[T]he calculation contemplated in the definition of the EBITDA Margin Requirement is as follows:" (March 7, 2016 Report, page 10);

"Vocus' calculations, however, did not conform to the calculation contemplated in the definition of the EBITDA Margin Requirement" (March 7, 2016 Report, page 10);

"I recalculated the cumulative EBITDA Margin in conformance with the calculation contemplated in the definition of the EBITDA Margin Requirement." (March 7, 2016 Report, page 11);

"I have concluded that the calculation [of EBITDA Margin Requirement] is as follows:" (June 22, 2016 Report, page 4);

"As previously stated in my counterclaim rebuttal report, I read the clause "all as determined in accordance with GAAP' to be …" (June 22, 2016 Report, page 7); and

"My reading is consistent with hundreds of purchase agreements I have read [but which Mr. Bialecki refused to produce]" (June 22, 2016 Report, page 7). Divelbiss Declaration ¶ 3.

When asked to produce a 30(b)(6) witness concerning "[w]hether Plaintiff satisfied the EIBTDA Margin Requirement under the February 24, 2011 Asset Purchase Agreement, curiously Vocus failed to produce a witness. Divelbiss Declaration ¶ 4. When asked to produce a 30(b)(6) witness regarding "Plaintiff's performance and/or whether Plaintiff satisfied its obligations under the February 24, 2011 Asset Purchase Agreement" Mr. Bialecki was designated regarding satisfaction of the EBITDA Margin Requirement. Divelbiss Declaration ¶ 5.

Mr. Bialecki's deposition testimony is consistent in that Mr. Bialecki repeatedly opines that under *his interpretation* of the terms of the APA, the margin requirement was not satisfied.

Mr. Bialecki is a CPA who was hired to do calculations. He can be given assumptions; i.e., "assume that the parties intended that cumulative earning be reduced by the 2% limitation that related to the monthly run rate and based upon that assumption, was the EBITDA Margin Requirement satisfied?" Based upon those assumptions Mr. Bialecki can undertake his

calculation. However, Mr. Bialecki cannot do exactly what he has done in his reports and in his testimony, that being to interpret the agreement and intent of the parties from language in the APA.

It is not a coincidence that Mr. Bialecki, as the Vocus, Inc. 30(b)(6) witness regarding the question of Plaintiff's performance under the APA, never bothered to comply with his duties as a 30(b)(6) witness and contact Vocus management to determine Vocus' intent with respect to calculation of the EBITDA Margin Requirement. It is because, as Mr. Bialecki notes in his report, Vocus management was adamant that Vocus' intent was *NOT* to reduce cumulative earnings by the amount of revenue excluded for purposes of determining the Monthly Run Rate under the APA. In fact, in his report, Mr. Bialecki admits "I acknowledge that my calculation of the cumulative EBITDA margin is not reflective of Mr. Vintz's conception of the intent of the EBITDA Margin Requirement, as he has now testified. (June 22, 2016 Report, page 13). Keep in mind that Mr. Bialecki was not associated with Vocus when the APA was entered into. It was Mr. Vintz, the company CFO, who negotiated, and on behalf of Vocus, signed the APA. Yet, Mr. Bialecki continues to proffer his individual interpretation and intent with respect to how the parties intended to calculate the EBITDA Margin Requirement. That is improper.

### III. LEGAL DISCUSSIONS

The purpose of a motion *in limine* is to prevent a party from encumbering the trial record with irrelevant, immaterial, or cumulative matters. *INSLA W, Inc. v. United States*, 35 Fed. Cl. 295, 302-03 (1996) (quoting *Baskett v. United States*, 2 Cl. Ct. 356, 367-68 (1983), aff'd, 790 F.2d 92 (Fed. Cir. 1986) (table)). Rule 702 of the Federal Rules of Evidence provides governing standards for admitting expert testimony. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,586-87 (1993).

Expert testimony is admissible if it "will help the trier of fact to understand the evidence or determine a fact in issue [.]" FED.R.EVID. 702(a). Thus, for example, expert testimony usually is admitted—and sometimes necessary—in cases involving claims of professional negligence, product defect, and business interruption damages, to prepare the jury to knowledgeably evaluate a party's actions against an applicable standard of care, to aid the jury's

understanding of engineering data, and to help the jury evaluate complex financial records. However, it is well established that experts may not give opinions on legal questions. "An expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir.2002). Similarly, instructing the jury as to the applicable law "is the distinct and exclusive province" of the court. *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir.1993).

As is relevant here, the "interpretation of a contract is a question of law for the court." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096 n. 5 (5th Cir. 1995); see also *Cunningham & Co. v. Consolidated Realty Mgmt., Inc.*, 803 F.2d 840, 843 (5th Cir. 1986) (contract interpretation is a question of law for the court, not the jury); See, e.g., *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) (holding that expert testimony regarding parties' obligation under the relevant contract impermissibly offered a legal conclusion).

Thus, an expert is prohibited from offering his opinion as to the legal obligations of parties under a contract." *Green Machine Corp. v. Zurich Am. Ins. Group*, 2001 WL 1003217 (E.D. Pa. Aug. 24, 2001), aff'd, 313 F.3d 837 (3d Cir. 2002); *Montecello Ins. Co. v. City of Miami Beach*, 2009 WL 667454 (S.D. Fla. Mar. 11, 2009) (the court rejected that testimony as "not useful," "persuasive" or "conclusive" because the construction of a policy is a question of law for the court.) As stated in *Rumsfeld v. United Technologies Corp.* 315 F.3d 1361 (Fed. Cir. Jan. 15, 2003):

> The issue in this case is whether CAS required Pratt to include a "cost" for collaboration parts in its allocation bases used to allocate overhead. Resolution of this question requires us to interpret CAS. Contrary to the Board's approach, the central issue we confront — the interpretation of CAS — is an issue of law, not an issue of fact, as we have made clear in our prior decisions. Martin Marietta, 13 F.3d at 1568; see also Gen. Elec. Co. v. Delaney, 251 F.3d 976, 978 (Fed.Cir.2001) ("federal procurement law, [and] the board's conclusions of law, such as the meaning of a regulation or statute, are reviewed de novo"); United States v. Boeing Co., 802 F.2d 1390, 1393 (Fed.Cir.1986) ("The interpretation of regulations which are incorporated into government contracts is a question of law which this court is free to resolve."). The views of the self-proclaimed CAS experts, including professors of economics and accounting, a former employee of the CAS Board, and a government contracts accounting consultant, as to the proper interpretation of those regulations is simply irrelevant to our interpretive task; such evidence should not be received, much less considered, by the Board on the interpretive issue. That interpretive issue is to be approached like other legal issues — based on briefing and argument by the affected parties (Testimony

as to the requirements of GAAP is another matter; the Board could properly consider expert testimony on such an issue)

After a contract term is found to be ambiguous, it then become the province of the fact finder (here the court) to determine ***intent of the parties***. *Amica Mut. Ins. Co. v. Moak*, 55 F.3d at 1096 n. 5; *Cunningham & Co. v. Consolidated Realty Mgmt., Inc.*, 803 F.2d at (contract interpretation is a question of law for the court, not the jury.) As discussed in greater detail above, Mr. Bialecki's "reinterpretation" of the term of the relevant contract term is of no consequence, is irrelevant and is misleading because it is contrary to the intent of the party itself. The fact that Mr. Bialecki acknowledges that Vocus' CFO (Mr. Vintz) believes that EBITDA is not to be calculated in the manner Mr. Bialecki now claims is very telling. Mr. Bialecki's conclusion regarding calculation of EBITDA Margin Requirement is contradicted by the underlying assumption: that the parties' intent and subsequent conduct was for the two percent limitation not to be included in any such calculation.

The interpretation of the APA is within the sole purview of the Court and not subject to expert opinion regarding how to determine the intent of the parties. Vocus' attempt to have its expert opine on interpretations of the APA and specifically the intent underlying the EBITDA Margin Requirement is improper and must be excluded. "[T]he interpretation of the contract is for the [trier of fact] and the question of the legal effect is for the judge. In neither case do we permit expert testimony." *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969).

## IV. CONCLUSION

This Court should issue an order excluding Defendant and Counterclaimant from referring to or introducing into evidence any legal interpretations by Matthew Bialecki especially when the underlying facts contradict his conclusion.

Respectfully Submitted,

DATED: July 5, 2016            JRA LAW PARTNERS, LLP

By: _____s/Rod Divelbiss_____
     Rod Divelbiss
     Attorneys for Plaintiff