UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NORTH VENTURE PARTNERS, LLC,

    Plaintiff,

    v.

VOCUS, INC., et al.,

    Defendants.

Case No. 14-cv-00337-RS

**ORDER DENYING NORTH VENTURE PARTNERS' MOTION FOR REVIEW OF SPECIAL MASTER FEES**

## I. INTRODUCTION

Plaintiff and counter-defendant North Venture Partners, LLP seeks review of special master fees assessed in this settled action, which was dismissed with prejudice on August 29, 2016. For the reasons that follow, the motion for review is denied.

## II. BACKGROUND

North Venture Partners, LLP ("NVP") creates and promotes social media software and business services. In 2010, NVP founded North Social, which promoted a suite of Facebook Fan Page applications and services for purchase, download, and installation. In 2011, defendant and counter-plaintiff Vocus, Inc. acquired North Social, agreeing to pay NVP $7,000,000 up front, and up to $18,000,000 in "earn-out" payments pegged to performance and profitability targets. Eventually, a dispute arose as to how much NVP was owed in earn-out payments, and NVP filed this action in January 2014, seeking $6,441,473 or more in unpaid earn-out. Upon stipulation by the parties, a special master was appointed pursuant to Federal Rule of Civil Procedure 53 in order to assist in determining disputed revenues for the purposes of calculating the earn-out owed.

On May 11, 2015, an order issued, providing for the appointment of a special master, and outlining the special master's duties. The parties selected forensic accountant Basil Imburgia of FTI Consulting to serve as special master, and on July 7 an order issued appointing Imburgia

special master. FTI then delivered an "Engagement Letter" to the parties, providing, among other things, that Imburgia would bill $780 per hour, that he might rely on the assistance of other FTI personnel, and that the parties would have 20 days after the issuance of an invoice to dispute any fees. Both parties signed the letter.

Serving as special master, Imburgia reviewed expert reports submitted by the parties, conducted a three-day evidentiary hearing in San Francisco, and ultimately issued a 38-page report providing his conclusions and analysis. In the process, he was assisted by two other FTI personnel. On January 8, 2016, Imburgia notified the parties his report was complete, and would be issued upon payment of his fees, which amounted to $428,699.85. Although the parties were apparently surprised by the amount, they paid the fees without objection. The case ultimately settled in August, and was dismissed with prejudice on August 29. Nonetheless, NVP remained frustrated with the fee amount, and on August 18 it sent a letter to FTI seeking reduction of Imburgia's fees. FTI did not comply, and NVP filed this motion to have the fees reviewed. In the meantime, it apparently enlisted the services of an accounting firm to attempt to replicate Imburgia's work, as well as an independent accountant to review Imburgia's invoice. According to NVP, the work of these accountants indicates Imburgia improperly overbilled for his services. [1]

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 53 allows for the appointment of a special master. Fed. R. Civ. P. 53(a). "Before or after judgment, the court must fix the master's compensation on the

---

[1] In response to NVP's motion, Imburgia cross-moves for costs and attorneys' fees pursuant to 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). Sanctions under this provision "must be supported by a finding of subjective bad faith, which is present when an attorney knowingly or recklessly raises a frivolous argument." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (citation and internal quotation marks omitted). Imburgia makes no such showing. Although NVP's motion does not succeed, it has not raised a frivolous argument in calling for the discretionary review of the special master's fees. Accordingly, Imburgia's motion for costs and fees is denied.

basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an opportunity to be heard." Fed. R. Civ. P. 53(g).  A district court has "broad discretion under Rule 53 to adjust [a special master's] pay according to his performance." *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 1001 (9th Cir. 2003).

## IV.  DISCUSSION

NVP's arguments for why the special master's fee should be reduced are somewhat scrambled, but its relevant contentions appear to be: (1) that Imburgia's hourly rates were unreasonably high; (2) that Imburgia and his team members engaged in duplication of effort; (3) that efforts by an independent accountancy indicate Imburgia's work could have been completed in considerably less time and at considerably lower cost; and (4) that Imburgia improperly acted beyond the scope of his duties by performing a calculation of February 2013 revenue.[2]  Imburgia argues NVP's motion should be denied as untimely, because the Engagement Letter specified that any fee dispute should be raised within 20 days of the issuance of an invoice, and NVP received the final invoice on January 8, 2016, but did not object until August 18.  NVP has given no compelling explanation for this months-long delay.  Although the 20-day clause does not automatically deprive the Court of jurisdiction to fix a special master's fees under Rule 53, *see Cordoza*, 320 F.3d at 1001 (recognizing district court discretion to fix fees), there is no reason to decide if NVP's motion is time-barred, because it fails on the merits.

### A.  Hourly Rates

NVP argues Imburgia's rate of $780 per hour was unreasonably high because NVP's expert accountant charges only $595.  NVP, however, consented to Imburgia's rate by signing the

---

[2] In its motion, NVP also takes issue with Imburgia's appointment as special master.  Specifically, it points out that Imburgia does not have an office in the Northern District of California, as the Order to Appoint Special Master required of the special master, and that Imburgia was a forensic accountant, whereas it had indicated a preference for a practicing accountant to serve as special master.  Although the motion does not appear to offer these complaints as bases for relief, they are nonetheless inappropriate to consider because NVP consented to Imburgia's appointment, and an order appointing him issued in July 2015.  NVP has offered no compelling reason why it should be permitted to object to Imburgia's appointment over a year later, after he completed his services and the case settled.

Engagement Letter issued by FTI at the onset of Imburgia's service, and has offered no compelling reason why it should be permitted to question that rate now, over a year later. Thus, Iburgia's rate will not be reduced.

### B. Duplication of Effort

Next, NVP alleges Imburgia and his colleagues engaged in significant duplication of effort, unreasonably driving up fees. Specifically, NVP points to vague invoice charges like "reviews," "analyses," and "team meetings," as well as the costs associated with Imburgia's colleagues accompanying him to San Francisco for the evidentiary hearing. The Engagement Letter, however, clearly states Imburgia could rely on the assistance of other FTI staff. Likewise, while Imburgia's invoice may not be a paragon of clear or transparent billing, it does not amount to evidence of unnecessary duplication of effort. Thus, no fee reduction will be ordered as a result of alleged duplication of effort.

### C. Comparable Work

According to NVP, Imburgia and his FTI colleagues also performed too much work, because the independent accountancy retained by NVP performed for under $20,000 a revenue calculation "in many respects very similar" to that performed by Imburgia. Imburgia, however, conducted evidentiary hearings, reviewed the parties' filings and expert reports, and produced a 38-page report compiling his findings. NVP makes no showing that its firm made similar efforts, and cannot simply claim no such efforts were necessary; Imburgia's efforts were undertaken pursuant to the scope of his duty as provided in the Order Appointing Special Master. It is simply not material that another accountancy, at NVP's behest and beyond the court's supervision, approximated a similar revenue calculation through less extensive effort. Accordingly, the allegedly comparable work provides no basis for concluding Imburgia performed unnecessary work and should have his fee reduced.

### D. February 2013 Revenue Calculation

Finally, NVP contends Imburgia impermissibly acted beyond the scope of his duty by calculating February 2013 revenue instead of merely relying on evidence submitted by the parties'

experts. In NVP's view, the calculation was unnecessary because the parties' experts had performed their own calculations and submitted them for review. Nonetheless, there is no reasonable basis for challenging the February 2013 revenue calculation, because the Order to Appoint Special Master instructed the special master to make "computations" to determine the "amount of revenue that should have been recognized on a monthly basis for purposes of calculating the Earn-Out." Moreover, NVP claims the February 2013 revenue was the only amount in serious dispute; it therefore makes sense Imburgia would attempt to calculate the amount independently rather than relying on calculations submitted by partisan experts. Thus, no fee reduction will be granted on the basis of Imburgia calculating the February 2013 revenue.

## V.  CONCLUSION

For the foregoing reasons, NVP's motion is denied and the special master's fee shall not be reduced.

**IT IS SO ORDERED**.

Dated: November 18, 2016

_____
RICHARD SEEBORG
United States District Judge